ROTATING SERVICES INDUSTRIES, INC., Appellant,

v.

Sue HARRIS d/b/a The Harris Agency & Nationwide Insurance Company, Appellees.

No. 01–05–00874–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 26, 2007.

Marcellous S. McZeal, McGuire, Grealish & McZeal, LLP, Houston, TX, for Appellant.

Kevin F. Risley, Thompson, Coe, Cousins & Irons, L.L.P., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

The trial court resolved competing claims to proceeds of a life-insurance policy by rendering summary judgment in favor of appellees, Sue Harris .d/b/a The Harris Agency and Nationwide Life Insurance Company, which had paid the proceeds to the widow of the insured, Kent A. Weightman, the owner of the policy, pursuant to a change-of-beneficiary designation submitted to, recorded by, and confirmed by Nationwide. The single issue of appellant, Rotating Services Industries, Inc., challenges Weightman's widow's right to the proceeds, on the grounds that an earlier change-of-beneficiary designation controls. We affirm.

### Facts and Procedural Background

At age 44, Weightman applied for a Nationwide life policy through the Harris Agency. Weightman identified himself in the application as a 24–year employee and manager of Rotating Services, a turbinerepair business. Weightman named his "business partner," Michael Fruger, the "irrevocable" beneficiary of the policy.[1] Weightman did not name a contingent beneficiary. On October 28, 1997, Nationwide issued to Weightman a $100,000 "levelterm to age 70" life policy, with an initial annual premium of $502.00. The policy identified Weightman as owner and named insured.

By operation of the "Owner and Beneficiary Provisions" of the policy, which identify the beneficiary and any contingent beneficiaries as those "named in the application," Fruger was the sole beneficiary and, also, by Weightman's handwritten notation, an irrevocable beneficiary. Both designations were subject to change, however, pursuant to provisions of the policy that authorized Weightman to change the designated beneficiary, provided that "[a]ny change" of beneficiary "be in a writ-

---

1. The word "irrevocable" was a handwritten notation added to the application beside Fruger's name.

ten form satisfactory to [Nationwide] and recorded" at its home office.

During the first year that the policy was in force, Nelda Perez Leal became the owner and principal of the turbine-repair business. On October 29, 1998, the first day after the anniversary date of the policy, Weightman signed a Nationwide form requesting that the beneficiary of his policy be changed to "Rotating Services Industries, Inc." (hereinafter Rotating Services). Leal added her signature as witness, and the change-of-beneficiary form was transmitted to Nationwide. A boxed caption on the face of the form states, "Please read instructions on reverse side," but the summary judgment record contains only this single page of the application.

On January 31, 2000, a Nationwide representative issued a notice to Weightman, which reads in part as follows:

A recent review of our records revealed that we received a change of beneficiary request in 1998 which was not processed.

We are unable to process the requested change as Michael Fruger is listed as the irrevocable beneficiary on our records and his signature is required to make any changes. Please complete the attached form and return it to us, with one copy of this letter, in the enclosed pre-addressed envelope. We will change the beneficiary designations once the forms are received and attested in our office.

Upon acceptance of the change, confirmation will be sent to you for your policy records.

Along with this notice, Nationwide forwarded to Weightman a form captioned "Application for Change of Beneficiary Designation." This form had been partially completed by Nationwide with the typewritten names and personal identification information for Weightman's wife, as the proposed beneficiary, and his two children, as the proposed contingent beneficiaries, as well as Weightman's name, as the owner of the policy, and Fruger's name, as the then designated irrevocable beneficiary. Instructions referenced in and attached to the form stated that the application revoked "ALL previous beneficiaries" and that the signatures of Weightman, as insured and owner, and of Fruger, as irrevocable beneficiary, were required to effect the change of beneficiary from Fruger to Weightman's wife, as primary beneficiary, and his children, as contingent beneficiaries.

Weightman did not execute the partially completed form that accompanied the January 31, 2000 correspondence from Nationwide, but signed a Nationwide change-of-beneficiary form on July 27, 2000, in which he designated his wife as primary beneficiary and his two children as contingent beneficiaries. In accordance with instructions that accompanied the January 31, 2000 correspondence from Nationwide, this change-of-beneficiary form included the signature of Fruger, the "irrevocable" beneficiary designated in Weightman's 1997 application.[2] A Nationwide "Beneficiary

2. In responding to Nationwide's and the Harris Agency's motion for summary judgment, Rotating Services provided documentary evidence consisting of a Nationwide change-of-beneficiary form that required the signature of *either* the insured *or* any irrevocable beneficiaries. Nationwide and the Harris Agency demonstrated in reply that the form in ques-

tion was not in effect until after Weightman submitted the 1998 change-of-beneficiary form. Rotating Services also notes that the form Weightman submitted to Nationwide in 2000 has no blank space designated for the irrevocable beneficiary to provide his signature. Rotating Services does not, however, contest that Fruger signed the 2000 form.

Report," dated August 15, 2000, recorded the requested changes of beneficiaries, and correspondence to Weightman of the same date confirmed the changes.

Weightman died on February 19, 2001. On March 27, 2001, his widow filed a request for payment of the life policy proceeds, which Nationwide issued on April 11, 2001.

On November 14, 2002, Rotating Services sued Nationwide and Harris, claiming that it was entitled to the proceeds of the policy because Nationwide and Harris "never completed" the 1998 change of beneficiary in favor of Rotating Services and because the 2000 change of beneficiary was "clearly forged." Rotating Services' live pleadings allege that Nationwide and Harris committed deceptive trade practices, negligence, bad faith, and breach of contract. Rotating Services also claimed that it could recover as a third-party beneficiary to the insurance-policy contract and that Nationwide was estopped to deny Rotating Services' right to the policy proceeds.

Nationwide and Harris filed a joint motion asserting no-evidence and traditional grounds for summary judgment. In support of their traditional motion, Nationwide and Harris provided documentary evidence, consisting of authenticated exhibits that tracked the Weightman policy from application through issuance of the death-benefit check paid to his widow, as set out above.[3] The documentary evidence includ-

ed the 1998 single-page application to change the beneficiary to Rotating Services. Rotating Services responded and moved for continuance, to which Nationwide and Harris filed a reply. Rotating Services filed an amended response that included a cross-motion for summary judgment, to which Nationwide and Harris filed an additional reply.[4] Rotating Services then filed an amended petition, after which the trial court rendered summary judgment.

### Standard of Review—Traditional Summary Judgment

We review summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). The well-settled principles that control review of summary judgments apply to cases seeking insurance coverage. *Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 327 (Tex. App.-Houston [1st Dist.] 1999, pet. denied). As the movants for traditional summary-judgment, therefore, Nationwide and Harris had to conclusively establish their right to summary judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000). To prevail by traditional summary judgment against Rotating Services, Nationwide and Harris had to defeat at least one essential element of each of Rotating Services' causes of action. *See Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004). Once the movant estab-

---

3. Rotating Services objected to the authentication of portions of Nationwide's and the Harris Agency's exhibits, but did not obtain a ruling on the objections. Rotating Services has not asserted an issue or point of error premised on admissibility in this Court.

4. Rotating Services premised its cross-motion for summary judgment on its claim for breach of contract and thus sought only a partial summary judgment, rather than a final judgment, on its asserted causes of action. In this

Court, Rotating Services does not seek rendition in its favor, but a remand for trial. Under the circumstances, Rotating Services is precluded from contending on appeal that the trial court erred by denying Rotating Services' motion. *See CU Lloyd's v. A. Feldman*, 977 S.W.2d 568, 569 (Tex.1998) (outlining prerequisites to standards that control review when both parties move for summary judgment).

lishes that it is entitled to summary judgment, the non-movant can defeat that showing only by producing evidence that raises a genuine issue of material fact. Tex.R. Civ. P. 166a(c); *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996).

■ In reviewing a summary judgment, we assume that all evidence that favors the non-movant, here Rotating Services, is true, and we indulge every reasonable inference and resolve any reasonable doubt in the non-movant's favor. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Walker,* 924 S.W.2d at 377. Because the trial court did not state the grounds on which it rendered summary judgment, we may affirm on any meritorious theory on which Nationwide and Harris relied to defeat Rotating Services' claims. *See Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156–57 (Tex.2004).

### Payment of Life–Policy Proceeds to Designated Beneficiary

#### A. No Vested Beneficiary Rights Arose until Weightman Died

■ The policy that insured Weightman's life was a contract between him and Nationwide. *See Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692 (Tex. 1994). Despite the initial, handwritten designation of Fruger as irrevocable beneficiary, it is undisputed that the terms of the policy granted Weightman a continuing right to change any designated beneficiary. A beneficiary named under a life-insurance policy has no standing to recover under the policy unless his interest has vested. *See Cates v. Cincinnati Life Ins. Co.,* 947 S.W.2d 608, 614 (Tex.App.-Texarkana 1997, no writ), *op. on remand from* 927 S.W.2d 623 (Tex.1996). As explained in *Cates,* settled Texas law holds that a named beneficiary has no vested interest in the policy proceeds unless one of the following conditions occurs: (1) a contract—separate from the policy itself—proscribes any change in the designation of the beneficiary, *id.; see O'Neill v. Conn. Mut. Life Ins. Co.,* 544 S.W.2d 741, 744 (Tex.Civ.App.-Houston [1st Dist.] 1976, writ ref'd n.r.e.); (2) the policy itself does not authorize the owner of the policy to change the beneficiary, *Cates,* 947 S.W.2d at 614 (citing *McNeill v. Chinn,* 45 Tex. Civ.App. 551, 101 S.W. 465, 467 (Tex.Civ. App. 1907)); or (3) the insured dies. *Cates,* 947 S.W.2d at 614; *see Volunteer State Life Ins. v. Hardin,* 145 Tex. 245, 197 S.W.2d 105, 107 (1946) (restating "well settled" rule that no rights to proceeds of life policy vest in named beneficiary when policy authorizes change of beneficiary). Unless one of these events occurs to vest the beneficiary's rights, the insurer may not prevent the owner of the policy from exercising his right to change the beneficiary. *See State Farm Life Ins. Co. v. Martinez,* 174 S.W.3d 772, 781 (Tex.App.-Waco 2005), *rev'd on other grounds,* 216 S.W.3d 799, 50 Tex. Sup.Ct. J. 406, 2007 WL 431043 (Tex. Feb. 9, 2007). As explained below, none of these events occurred to vest any rights in Rotating Services as a beneficiary of Weightman's life policy.

#### 1. *No Separate Contract Controlled Beneficiary Designation*

■ This Court's *O'Neill* decision, which addressed rights of a beneficiary that were conferred in a separate agreement incident to a divorce, *see O'Neill,* 544 S.W.2d at 743–44, arose under the first condition for rights vested in a beneficiary, as identified in *Cates,* 947 S.W.2d at 614.

Rotating Services opposed Nationwide's and the Harris Agency's motion for summary judgment based in part on the affidavit of Leal, who became Rotating Services' principal in summer 1998. Leal stated in

her affidavit that Weightman notified her "in writing that he intended to change the beneficiary status of the life policy to my company, Rotating Services, Inc." Leal attached to her affidavit "a true and correct copy" of correspondence dated July 13, 1998, signed by Weightman, and directed "to whom it may concern," which states,

> I, Kent A. Weightman, hereby I'm [sic] changing Beneficiary on my policy # L032876420 from Michael Fruger to Nelda Leal's new company Rotating Services Industries. Let this document serve as my good faith to the company. In case of my death, the company can hire someone to continue my work and also pay up on some debts that I owe the company.

Unlike in *O'Neill*, this correspondence did not constitute a "separate contract" that vested rights to the proceeds of Weightman's policy in Rotating Service. Though it recites Weightman's stated intent, on July 13, 1998, to benefit Rotating Services, the correspondence does not confer a permanent, "irrevocable" designation of Rotating Services as a beneficiary under the life policy, because the correspondence neither reflects nor suggests that Weightman also decided to surrender his undisputed right, expressly conferred by the terms of the policy, to change beneficiaries in the future. Accordingly, the summary judgment record of this case does not show or suggest that a separate contract forbade or restricted the rights afforded Weightman, as insured and owner of the policy, to modify the provisions of the policy that authorized him to change beneficiaries. Thus, the first condition for rights vested in a beneficiary does not apply to Rotating Services. *See Cates,* 947 S.W.2d at 614.

### 2. *Weightman Retained Continuing Right to Change Beneficiaries*

A prohibition stated in the policy, the second possibility under which Rotating Services could have attained rights as a beneficiary, also does not apply. *See id.* It is undisputed that the terms of the policy issued to Weightman recognized his continuing authority to change policy beneficiaries and that no policy provision restricts Weightman's rights as to Rotating Services. Though Weightman identified Rotating Services as his employer in his application, the policy does not refer to Rotating Services specifically or provide any restriction that applied or can be construed as applying any benefit to Rotating Services, as explained more fully below.

### 3. *No Beneficiary Vested until Weightman Died*

Weightman's death, the last possible condition under which rights might vest in a named beneficiary, did not occur until February 19, 2001. *See Volunteer State Life,* 197 S.W.2d at 107; *Cates,* 947 S.W.2d at 614. Until that date, the policy allowed Weightman to change any beneficiary. Based on the beneficiary designation in effect on that date, those rights accrued to his widow, to whom Nationwide issued the proceeds as Weightman's designated beneficiary.

### B. Rights of Owner and Insurer Relating to Change of Beneficiary

The terms of the policy determine not only the right of the owner, Weightman, to change beneficiaries, but also the right of the insurer, Nationwide, to question the validity of the owner's change of beneficiary. *See Martinez,* 216 S.W.3d 799, 50 Tex. Sup.Ct. J. at 407–08, 2007 WL 431043, at *2 (citing Acts of 1953, 53rd Leg., R.S., ch. 113, 1953 Tex. Gen. Laws 400 (current version at TEX. INS.CODE ANN. 1103.055 (Vernon Supp.2006)) (subchapter B of chapter 1103, governing designation of beneficiary of life policy)); *Volunteer*

*State Life,* 197 S.W.2d at 107; *see also Tips v. Sec. Life & Accident Co.,* 144 Tex. 461, 191 S.W.2d 470, 471–72 (1945) (holding that signed change-of-beneficiary forms retained in possession of insured and not transmitted to insurer before his death did not result in change of beneficiary).

■ *Martinez,* like this case, involved competing claims to the proceeds of a life policy, the terms of which required that a request for a change of beneficiary be written "in a form acceptable" to the insurer. *Martinez,* 216 S.W.3d 799, 50 Tex. Sup.Ct. J. at 408, 2007 WL 431043, at *2. Because the insured in *Martinez* used State Farm's "own printed form" to change his designated beneficiary, the supreme court reasoned that State Farm had no reason to reject the change of designation as "unacceptable" for reasons of *form,* despite "valid concerns" that payment of the policy proceeds might violate provisions of the insured's divorce decree. *See id.* On "substantial compliance" with the requirements stated in the policy for beneficiary changes, therefore, the insurer must honor the request and effect the change. *See Stewart v. Mut. Ben. Life Ins. Co.,* 522 S.W.2d 257, 260 (Tex.Civ. App.-Amarillo 1975, writ ref'd n.r.e.) (rejecting contention that policy language, requiring that request be "satisfactory" to insurer, created express condition that insurer consent to request).

The life policy at issue in this case contained a similar provision to that construed in *Martinez* and required that "any change [of beneficiary] must be in a written form satisfactory to [Nationwide]." *See Martinez,* 216 S.W.3d 799, at 801, 50 Tex. Sup.Ct. J. at 408, 2007 WL 431043, at *2. In addition, and in contrast to the life policy in *Martinez, see id.,* the policy here required that any change be "recorded" at the Nationwide home office. In further

contrast to *Martinez,* the original beneficiary named in this case was designated an "irrevocable" beneficiary.

Rotating Services argues that the change-of-beneficiary form that Weightman signed on October 29, 1998 to designate Rotating Services a beneficiary (the 1998 change) was in substantial compliance with Nationwide's requirements, that Nationwide accepted Weightman's form, or, alternatively, that Nationwide had no basis on which to reject it. Rotating Services relies on the Court's opinion in *Gladding v. Prudential Ins. Co. of Am.,* 521 S.W.2d 736, 739 (Tex.Civ.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.), which upheld a change-of-beneficiary designation on grounds of substantial compliance. Rotating Services' contentions, however, are not material to the outcome of this case. *See Collins v. Guinn,* 102 S.W.3d 825, 834 (Tex.App.-Texarkana 2003, pet. denied) (describing "material" fact that will preclude summary judgment as one that will affect outcome under substantive law); *Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 433 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (decided under Tex. Civ. P. 166a(i)) (describing material fact issue as "genuine" only if reasonable jury could find in favor of nonmoving party based on that fact).

The only summary judgment evidence of Weightman's October 1998 change is the single-page change-of-beneficiary form that he signed and Leal witnessed. Rotating Services contends that Nationwide accepted this change by emphasizing that the face of this form contains a captioned, preprinted rectangle in which the signature of the Nationwide corporate secretary appears. The caption within this rectangle states, "FOR HOME OFFICE USE ONLY" and "Agreed to for Nationwide Life Insurance Company." Rotating Services relies on this signature, which ap-

pears to be preprinted on the form, to support its contention that Nationwide accepted Weightman's October 1998 change of beneficiary. Blanks within the captioned box, marked "Attest" and "Date," however, are blank. Moreover, in contrast to the "Beneficiary Report" that Nationwide issued to Weightman on August 15, 2000, Nationwide did not confirm any change of beneficiary in favor of Rotating Services. Rotating Services' summary-judgment evidence does not, therefore, demonstrate or suggest that Nationwide accepted and recorded Weightman's January 1998 change, as required by the policy provisions. To the contrary, on January 31, 2000, Nationwide had notified and instructed Weightman, as insured and undisputed owner of the policy, that both his signature and the signature of Fruger, the previously designated irrevocable beneficiary, were required to accomplish a change of beneficiary from Fruger.

Regardless, the summary-judgment evidence conclusively establishes that Nationwide not only accepted and recorded, but also confirmed the change-of-beneficiary designation that Weightman executed on July 27, 2000, to change the beneficiary from Fruger, as "irrevocable" beneficiary, to Weightman's wife, as beneficiary, and his children, as contingent beneficiaries. Nationwide did not accept the 1998 change and did not record it, on the grounds that the signature of Fruger, who at that time was the sole, irrevocable beneficiary, was missing. But, even if Nationwide had deemed the 1998 change-of-beneficiary acceptable and had also recorded that change, Weightman still retained the right, as owner of the life policy and pursuant to the policy's "Owner and Beneficiary" provisions, to change the beneficiary yet again in July 2000.

We conclude that Rotating Services had no vested rights to the policy proceeds and

that Weightman's alleged compliance with the policy's change-of-beneficiary requirements in 1998 is immaterial, because Weightman later exercised his right as owner of the policy to change his designated beneficiary. Accordingly, we consider and apply these determinations as we below whether Nationwide and Harris conclusively established their right to summary judgment as a matter of law on Rotating Services' causes of action.

## C. Contract–Related Claims

■ Rotating Services is not a party to the insurance contract, which arose only between Weightman and Nationwide, see *Hernandez*, 875 S.W.2d at 692, and which Nationwide enforced in accordance with the beneficiary designation that vested upon Weightman's death. Accordingly, Rotating Services did not become a party to the insurance contract, with rights to enforce it, solely by virtue of Leal's having witnessed the 1998 change-of-beneficiary form in which Weightman attempted, but failed, to change his then-designated beneficiary, Fruger, to Rotating Services. And as shown above, Rotating Services never attained vested rights to the policy proceeds. *See Volunteer State Life*, 197 S.W.2d at 107; *Cates*, 947 S.W.2d at 614.

Rotating Services nonetheless contends that Nationwide and Harris breached contractually based duties owed to Rotations Services because (1) Nationwide improperly rejected Weightman's 1998 change-of-beneficiary form, (2) Rotating Services was a third-party beneficiary to the contract of insurance, and (3) Weightman intended to benefit Rotating Services through the 1998 change of beneficiary.

### 1. *Wrongful Rejection of 1998 Change of Beneficiary?*

■ As shown above, the summary judgment record shows that Nationwide

rejected Weightman's 1998 attempt to change the beneficiary of the policy from Fruger, his previously designated, irrevocable beneficiary, to Rotating Services because the change-of-beneficiary form that would have accomplished that change did not show that Fruger consented to the change. The summary judgment record also shows that Nationwide rejected the attempted 1998 change pursuant to the provisions of its insurance contract with Weightman and, therefore, that Fruger remained the irrevocable beneficiary until Weightman changed that designation with Fruger's consent. The summary judgment record thus fails to raise a genuine issue of material fact to support Rotating Services' claim that Nationwide or Harris breached any contractually based duty to Rotating Services when it rejected Weightman's attempted change of beneficiary in 1998.

2. *Rotating Services a Third–Party Beneficiary?*

 Nationwide and the Harris Agency also negated any benefit owed to Rotating Services as a third-party beneficiary of the contract between Weightman and Nationwide. One who is not a party to a contract, but who might receive an incidental benefit from the contract as a third party, cannot rely on the possibility of benefit as a basis on which to enforce the contract. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999). Because Weightman owned the policy and retained the right to designate his beneficiary under the policy provisions, any change of beneficiary in favor of Rotating Services necessarily created only the possibility of future benefit. *See id.* Rotating Services could recover on the insurance policy on Weightman's life only if (1) Weightman and Nationwide intended to secure a benefit to the Rotating Services and (2) Weightman and Nationwide

entered into the contract directly for the benefit of the Rotating Services. *See id.*

Nationwide's and the Harris Agency's summary judgment evidence conclusively established that (1) Weightman did not enter its contract of insurance with Nationwide for the benefit of Rotating Services, but for the benefit of Weightman's then-named beneficiary, Fruger, and (2) regardless of whether Weightman substantially complied with the change-of-beneficiary provisions of the policy and whether Nationwide accepted the 1998 change, any intent to secure a benefit to Rotating Services that may have arisen through that change was destroyed when Weightman changed his beneficiary designation in 2000, with the required consent of Fruger, and Nationwide accepted and recorded that change.

3. *Intent to Benefit Rotating Services?*

Rotating Services also opposed Nationwide's and the Harris Agency's motion for summary judgment based on the affidavit of Leal, who was Rotating Services' principal when Weightman died. Through her affidavit, Leal relied on a July 13, 1998 statement by Weightman, in which he recorded his intent to change the beneficiary of his policy from the designated, "irrevocable" beneficiary, Fruger, to Rotating Services, Inc. As addressed above, nothing in Weightman's "to whom it may concern" correspondence suggests that it operated to confer a permanent, "irrevocable" designation of Rotating Services as beneficiary under the life policy, because Weightman did not also surrender, and thus modify, the right conferred by the policy to change beneficiaries in the future. Because Weightman retained his right under the policy to change beneficiaries, any benefit inuring to Rotating Services remained a mere possibility and thus did not give rise to a material issue of fact concerning Rotating Services' status as a third-party

beneficiary. *See MCI Telecomms. Corp.,* 995 S.W.2d at 651. The same reasoning applies to Rotating Services' summary judgment evidence that it voluntarily paid policy premiums or contacted the Harris Agency concerning the policy.

We therefore hold that Nationwide and the Harris Agency established their right to traditional summary judgment on Rotating Services claims for breach of contract.

## E. "Forgery" and "Incapacity" Allegations Not Dispositive

■ Leal also averred in her affidavit that Weightman suffered a "debilitating stroke" in November 1999 that rendered him "unable to talk or write." Rotating Services contends that Weightman's signature on the 2000 change-of-beneficiary form is necessarily forged as a result, that Weightman lacked capacity to make the 2000 change, and, therefore, that fact issues arise concerning the change-of-beneficiary form that Weightman signed on July 27, 2000.

Even if true, Leal's allegations do not give rise to material fact issues concerning Rotation Services' right to the proceeds of Weightman's life policy. Leal's allegations would attain materiality only if we assume that Weightman's 1998 attempt to change his beneficiary was valid—a contention that we have already rejected. Consequently, establishing either that Weightman lacked capacity or that the 2000 change-of-beneficiary form were forged would not result in any benefit to Rotating Services. Instead, Weightman's original designation of Fruger as irrevocable beneficiary would remain unchanged. Rotating Services challenges to Weightman's signature and his capacity are thus immaterial to this lawsuit and raise no triable issues of material fact.

## G. Rotating Services was Not a DTPA Consumer

■ The summary judgment record conclusively establishes that, despite claims that it paid Weightman's premiums, Rotating Services' only relationship to the insurance contract between Weightman and Nationwide was as a potential, but failed, beneficiary of the $100,000 life proceeds. Settled Texas law recognizes that a party whose only relation to an insurance policy is to seek policy proceeds is not a "consumer." *Transp. Ins. Co. v. Faircloth,* 898 S.W.2d 269, 274 (Tex.1995) (citing *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983)).

The trial court properly rendered traditional summary judgment in favor of Nationwide and the Harris Agency on Rotating Services' DTPA claims.

## H. No Duty Owed to Rotating Services

Nationwide and the Harris Agency moved for traditional summary judgment on Rotating Services' negligence claim on the grounds that it owed no duty to Rotating Services as a matter of law. *See Mission Petroleum Carriers, Inc. v. Solomon,* 106 S.W.3d 705, 710 (Tex.2003) (enumerating elements of negligence claim and stating that whether duty owed is question of law). In response, Rotating Services argued that Nationwide "should have accepted" the 1998 change of beneficiary and should have paid the benefits to Rotating Services instead of to Weightman's widow. Nationwide and the Harris Agency replied that Rotating Services' "negligence" claims were all premised on alleged contractual duties owed or alleged DTPA violations. *See Southwestern Bell Tel. Co. v. De Lanney,* 809 S.W.2d 493, 494 (Tex.1991) (clarifying that negligence claim premised solely on alleged breach of contract, with loss measured by subject matter of contract, sounds in contract and does not give rise

to tort action). We agree, and therefore hold, that the trial court properly rendered traditional summary judgment in favor of Nationwide and the Harris Agency on Rotating Services' negligence claims.

## I. Estoppel to Deny Coverage, Waiver, and Reliance

After Nationwide and Harris filed their second reply to Rotating Services' response to their motion for summary judgment, Rotating Services filed an amended pleading claiming that Nationwide was estopped to deny benefits and had waived any right to deny paying the policy proceeds to Rotating Services, and that Rotating Services had relied to its detriment on future payment of the proceeds of the policy. Nationwide and the Harris Agency did not file an amended motion for summary judgment to address these claims.

A defendant who does not amend or supplement its motion for summary judgment to address claims asserted in a plaintiff's amended pleading is generally not entitled to a summary judgment on the plaintiff's entire case. *See Blancett v. Lagniappe Ventures, Inc.,* 177 S.W.3d 584, 592 (Tex.App.-Houston [1st Dist] 2005, no pet.); *Smith v. Atl. Richfield Co.,* 927 S.W.2d 85, 88 (Tex.App.-Houston [1st Dist.] 1996, writ denied). The portion of a final summary judgment rendered on the plaintiff's entire case under these circumstances must generally be reversed because the judgment grants more relief than requested. *See Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 200 (Tex.2001); *Blancett,* 177 S.W.3d at 592; *Postive Feed, Inc. v. Guthmann,* 4 S.W.3d 879, 881 (Tex. App.-Houston [1st Dist.] 1999, no pet.); *see also McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) ("A motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion.").

An amended or supplemental motion for summary judgment is not always necessary, however, when the amended petition essentially reiterates previously pleaded causes of action. *See Fraud-Tech, Inc. v. Choicepoint, Inc.,* 102 S.W.3d 366, 387 (Tex.App.-Fort Worth 2003, pet. denied). Summary judgment may also be proper when a ground asserted in a motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims, *see Blancett,* 177 S.W.3d at 592, or when the original motion is broad enough to encompass the newly asserted claims. *See Farah v. Mafrige & Kormanik, P.C.,* 927 S.W.2d 663, 671–72 (Tex.App.-Houston [1st Dist.] 1996, no writ); *Judwin Props., Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 502 (Tex.App.-Houston [1st Dist.] 1995, no writ).

Settled Texas law precludes a party from invoking estoppel to create insurance coverage where none exists under the terms of the policy. *See Tex. Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 602–03 (Tex.1988). Nationwide and Harris established as a matter of law, through their motion for traditional summary judgment, that Rotating Services was not entitled to the proceeds of the Weightman policy. That conclusion necessarily compels an additional conclusion—that the policy provided no coverage to Rotating Services. Under the circumstances demonstrated by the summary judgment record in this case, Rotating Services' waiver, estoppel and reliance claims are but alternative statements of its previously asserted claims to the policy proceeds.

By establishing that Rotating Services was not entitled to the proceeds of the Weightman policy as a matter of law, Nationwide and Harris necessarily established, in addition, that the policy provided

no coverage to Rotating Services as a beneficiary of the proceeds and therefore established, in addition, that Rotating Services could not assert either estoppel, waiver, or reliance as a basis for seeking the policy proceeds. *See* id. Nationwide's and Harris's motion was thus sufficient to defeat those claims without the need to file an additional motion for summary judgment. *Farah*, 927 S.W.2d at 671–72; *Judwin Props., Inc.*, 911 S.W.2d at 502.

We overrule Rotating Services' sole issue.

## Conclusion

We hold that the trial court properly rendered traditional summary judgment in favor of Nationwide and the Harris Agency and, therefore, we need not address Rotating Services' contentions that challenge the summary judgment on "no evidence" grounds.

We affirm the judgment of the trial court.